UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA JEAN BRYANT, | No. 2:19-cv-01743-TLN-CKD |
| Plaintiff, | |
| v. | **ORDER** |
| LOWE'S HOME CENTERS, LLC, | |
| Defendant. | |

This matter is before the Court on Defendant Lowe's Home Centers, LLC's ("Defendant") Motion for Summary Judgment. (ECF No. 18.) Plaintiff Sandra Jean Bryant ("Plaintiff") filed an opposition. (ECF No. 20.) Defendant filed a reply. (ECF No. 21.) For the reasons set forth below, Defendant's motion is GRANTED.

///
///
///
///
///
///
///
///

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

The instant action arises out of Defendant's alleged wrongful termination of Plaintiff. Plaintiff began working for Defendant in the Citrus Heights, California store in March 2017 as a part-time cashier, and about five months later she became a full-time cashier. (Def.'s Statement of Undisputed Facts, ECF No. 18-18 ¶¶ 1–2.) Her responsibilities included using a cash register "to process sales transactions, returns, and refunds according to company guidelines." (*Id.* at ¶ 3.) On November 19, 2018, Plaintiff processed three separate sales transactions for individuals who allegedly tried to pay with student loan debit cards. (*Id.* at ¶ 4.) These transactions were recorded by Defendant's security cameras and took place in less than ten minutes.[2] (*Id.* at ¶ 5.) All three customers presented merchandise and attempted to pay for the merchandise using a student loan debit card. (*Id.* at ¶¶ 7, 12, 16.) Plaintiff pressed the cash key, took no cash from any of the customers, and they all left with merchandise. (*Id.* at ¶¶ 9–10, 13–14, 16.) The first customer gestured to another man to approach Plaintiff's register and the second customer also gestured toward Plaintiff's register. (*Id.* at ¶¶ 11, 16.) The three transactions resulted in a loss of $2,442.30. (*Id.* at ¶ 18.)

After these transactions occurred, Defendant's Loss Prevention Manager Christopher Kurtz ("Kurtz") began an investigation in which he reviewed videos of the transactions[3] and ran a

---

[1]   The following facts are undisputed unless otherwise noted.

[2]   Plaintiff disputes this fact and the fact in paragraph 16 (which states the third customer presented a student loan debit card, the card was not charged, Plaintiff pressed the cash key but took no cash, and the customer left with the merchandise) as factually incomplete. (Pl.'s Response to Def.'s Statement of Undisputed Facts ("PR"), ECF No. 20-2 ¶¶ 5, 16.) Plaintiff contends Defendant's cameras also showed Plaintiff leaving the cash register to consult with the head cashier Linna Tapke ("Tapke") for guidance on handling unusual debit transactions. (*Id.*) Plaintiff further contends Defendant did not report another video in its discovery responses, destroyed the Tapke-Plaintiff discussion video before it could be produced to Plaintiff's attorney, and failed to enter the Tapke-Plaintiff video on its video log. (*Id.*) However, as failure to produce this video does not create a question as to whether the transactions were recorded by Defendant's security cameras, whether they took place in less than ten minutes, and whether the third transaction was completed as described, the Court will consider this fact undisputed for the purposes of this motion.

[3]   Plaintiff disputes this fact as factually incomplete, making the exact same argument as before. (PR ¶ 20.) Similarly, as failure to produce this video does not create a question as to

series of reports to look for other suspicious occurrences related to Plaintiff, such as running her employee discount card to determine what purchases she made and how she paid for them, checking for other cash shortages related to her, and watching live videos of her working. (*Id.* at ¶¶ 19–24.) On December 20, 2018, Defendant's Market Organized Retail Crime Manager James Baser ("Baser") interviewed Plaintiff and at the end asked her if she wanted to provide a written statement.[4] (*Id.* at ¶¶ 25, 34.) Plaintiff wrote in her statement that she did not recollect the transactions at issue. (*Id.* at ¶ 35.) After the interview, Baser called Denise Prado ("Prado"), the Area Human Resources Business Partner, who Baser understood would determine whether to terminate Plaintiff's employment. (*Id.* at ¶¶ 36–37.) Baser read Plaintiff's written statement to Prado, and then Baser and Prado had a second phone call in which Prado told Baser she consulted with the Regional Human Resource Business Partner and decided to terminate Plaintiff's employment. (*Id.* at ¶¶ 38–39.) Plaintiff was subsequently terminated. (*Id.* at ¶ 40.)

Defendant referred this matter to the Citrus Heights Police Department and provided the police with a loss prevention report. (*See id.* at ¶¶ 41–47.) The police reviewed the report, did not send the case to the district attorney, and the case was suspended. (*See id.* at ¶¶ 48–52.)

In December 2018, Plaintiff filed an unemployment benefits claim with the California Employment Development Department ("EDD") and in response to this claim Defendant stated Plaintiff was terminated after a loss prevention investigation. (*Id.* at ¶¶ 53–54.)

After her termination, Plaintiff states she submitted job applications to the 99 Cents Store and Costco, and responded to questions asking for the reason she left her prior employer by writing "wrongful termination." (*Id.* at ¶¶ 55–56.) Plaintiff concedes Defendant never told her she must disclose the fact of or reasons for her discharge to a prospective employer or any person.

---

whether Kurtz actually reviewed video of the transactions, the Court will consider this fact undisputed for the purposes of this motion.

[4]   Plaintiff disputes this, stating that Ashley Blaydes (a witness to the interview) described Baser as "intimidating." (PR ¶ 34.) Plaintiff also states Baser "kept attacking [her] . . . [and] it was his direct accusations without ever telling me why." (*Id.*) Because Baser's demeanor and tone do not contradict Defendant's assertion that "Baser asked [Plaintiff] if she wanted to give a written statement, which she said she did," the Court will consider this fact undisputed for the purposes of this motion.

1  (*Id.* at ¶ 57.)  Plaintiff testified that during her 99 Cents Store interview, she stated she was
2  terminated by Defendant because it accused her of being a thief.  (*Id.* at ¶ 58.)  Neither the
3  interviewer nor anyone else at the 99 Cents Store told Plaintiff to disclose the reasons she was
4  discharged by Defendant — she freely disclosed the reasons herself.  (*Id.* at ¶¶ 59–60.)  Plaintiff
5  did not disclose the reason for her termination to any other prospective employers and instead
6  began applying for bartending jobs.  (*Id.* at ¶ 61.)  When asked for the reasons why she left
7  employment with Defendant, she wrote "changing careers."  (*Id.* at ¶ 62.)

8  Plaintiff alleges Defendant published a statement that she was a thief to the Citrus Heights
9  Police Department, the California EDD, and internally to Human Resources.[5]  (*Id.* at ¶ 63.)
10 Plaintiff admits she processed the three transactions at issue improperly and that as a result
11 Defendant lost more than $2,400.  (*Id.* at ¶ 68.)

12 Plaintiff filed this action in Sacramento County Superior Court on July 5, 2019, alleging
13 claims for: (1) defamation; (2) wrongful termination in violation of public policy; and (3)
14 intentional infliction of emotional distress ("IIED").  (ECF No. 1 at 12–24.)  Defendant removed
15 the action to this Court on September 3, 2019.  (*Id.* at 1–11.)  Defendant filed the instant motion
16 for summary judgment on October 28, 2021.  (ECF No. 18.)

17 **II.    STANDARD OF LAW**

18 Summary judgment is appropriate when the moving party demonstrates no genuine issue
19 of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.
20 R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary
21 judgment practice, the moving party always bears the initial responsibility of informing the
22 district court of the basis of its motion, and identifying those portions of "the pleadings,
23 depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"
24 which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

---

[5]     Plaintiff disputes this as factually incomplete, stating that she also alleges Defendant internally published statements within its organization with malice and that these communications breached the "common interest" rule.  (PR ¶ 63.)  Because this does not contradict Defendant's summary of Plaintiff's allegations, the Court will consider this fact undisputed for the purposes of this motion.

4

*Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* (*Matsushita*), 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the

1 facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S.
2 at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
3 obligation to produce a factual predicate from which the inference may be drawn. *Richards v.*
4 *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.
5 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party
6 "must do more than simply show that there is some metaphysical doubt as to the material facts."
7 *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of
8 fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587.

**III.   ANALYSIS**

Defendant argues: (1) there is no triable issue of defamation; (2) Plaintiff's wrongful termination claim is not based on public policy and should be dismissed; and (3) Plaintiff's IIED claim fails as a matter of law.[6] (ECF No. 18-1 at 12–22.) The Court will address the arguments as to each claim in turn.

A.   Claim One: Defamation

Defendant argues Plaintiff identifies no defamation internally but even if she could the internal statements would be conditionally privileged, its statements to the Citrus Heights Police Department and EDD are privileged under California Civil Code § 47 ("§ 47"), and Plaintiff was not compelled to repeat the statements. (*Id.* at 13–14.) The Court will consider each argument in turn.

*i.   Internal Statements*

Defendant argues that Plaintiff "cannot identify a single employee of [Defendant's] who told another employee that she was a thief," but even if Plaintiff could produce evidence of defamatory statements published internally, the publication would not give rise to defamation because they would be conditionally privileged. (ECF No. 18-1 at 13–14 (citing *Manguso v. Oceanside Unified Sch. Dist.*, 153 Cal. App. 3d 574, 580–81; *King v. United Parcel Serv., Inc.*,

---

[6] Defendant also argues that Plaintiff's prayer for punitive damages must be summarily adjudicated in its favor. (ECF No. 18-1 at 20–22.) Because the Court grants Defendant's motion in full, it need not and does not address these specific arguments.

1  152 Cal. App. 4th 426, 440 (2007)).)

2  In opposition, Plaintiff does not explicitly identify the defamatory statements that were made against her.  (*See* ECF No. 20.)  Plaintiff asserts she "has amply demonstrated that [Defendant's] internal publications depicting Plaintiff as a thief and embezzler were motivated by malice," that the privilege codified by § 47 "is conditional, not absolute, and is lost if the privilege is abused or if the publication was motivated by malice."  (*Id.* at 5.)  Plaintiff further asserts it has demonstrated that Defendant's publications depicting her as a thief and embezzler were motivated by malice due to the following: Baser's "intimidating" and "like a police interrogation" interview; Defendant's failure to interview the head cashier, Tapke, who assured Plaintiff she should continue as she was doing; Defendant's destruction of an internal security video that showed the Tapke-Plaintiff conversation; and Defendant's insistence that the Citrus Heights Police Department charge Plaintiff with theft.  (*Id.* at 5–6.)

In reply, Defendant maintains that Plaintiff "has failed to identify a defamatory statement."  (ECF No. 21 at 4.)  Defendant states the two pieces of evidence offered in support of Plaintiff's allegation that Defendant made a defamatory statement are a document titled "Internal Theft Case" (the "Internal Theft Case document"), which simply states there is an internal theft investigation, and an internal email from Kurtz to Clausen and Baser (the "Kurtz email"), which asks for "a particular format for the case deck on the employee interviewed yesterday."  (*Id.* at 4–5 (citing ECF No. 20-8 at 14–18).)  Defendant states that neither statement is false or defamatory.  (*Id.*)

"In California, defamation is a claim based on an injury to one's reputation" and "the injury may occur by means of libel or slander."  *Bowles v. Constellation Brands, Inc.*, 444 F. Supp. 3d 1161, 1172 (E.D. Cal. 2020) (quoting *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003); Cal. Civ. Code § 44)).  The elements of a defamation claim include: (1) a publication; (2) that is false; (3) that is defamatory; (4) that is unprivileged; and (5) "that has a natural tendency to injure or that causes special damage."  *Id.* (citing *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1007 (2018), *disapproved of on other grounds by Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130 (2020)).  "Defamation constitutes an injury to reputation; the injury may occur by means

7

1    of libel or slander." *Shively*, 31 Cal. 4th at 1242.  Generally, libel is "a written communication
2    that is false, that is not protected by any privilege, and that exposes a person to contempt or
3    ridicule or certain other reputational injuries" and slander is "a false and unprivileged oral
4    communication, or uttering certain other derogatory statements regarding a person." *Id.*

5    Indeed, as Defendant correctly notes, Plaintiff raises the Internal Theft Case document and
6    the Kurtz email in her Response to Defendant's Statement of Undisputed Facts.  (PR ¶ 67.)  The
7    Court has reviewed the Internal Theft Case document and the Kurtz email.  The Internal Theft
8    Case document has a cover page that is titled "Internal Theft Case Sandie Bryant Pass off at POS
9    Store 1540 Citrus Heights Ca."  (ECF No. 20-8 at 15.)  It also contains a page stating "Purpose of
10   Request: Seeking approval to file charges with Citrus Heights PD."  (*Id.* at 16.)  The Kurtz email
11   states in full: "Shannon/Jimmy, is there a particular format for the case deck on the employee
12   interviewed yesterday that you want us to use?  If you have one you could send as an example
13   that I could switch out the info/photos that would be great."  (*Id.* at 18.)  With respect to either of
14   the documents, Plaintiff does not adequately establish that any statements are false or slander
15   (expose her "to contempt or ridicule or certain other reputational injuries"), which are the
16   required second and third elements of a defamation claim.  *Shively*, 31 Cal. 4th at 1242; *Bowles*,
17   444 F. Supp. 3d. at 1172.

18   Further, Plaintiff does not raise *any* other defamatory statement or identify *any evidence*
19   containing a defamatory statement in her opposition or Separate Statement of Undisputed
20   Material Facts.  (*See* ECF No. 20.)  The Court has reviewed the declaration of David Graulich
21   that is attached to Plaintiff's opposition, which has ten exhibits attached — half are portions of
22   witness depositions and half are various documents.  (*See* ECF No. 20-4.)  Because Defendant
23   has borne the initial responsibility of informing the Court that there is an "absence of a genuine
24   issue of material fact," it is Plaintiff's burden "to establish that a genuine issue as to any material
25   fact does exist."  *Celotex Corp.*, 477 U.S. at 323; *Matsushita*, 475 U.S. at 585–87.  The Court
26   declines to comb through each exhibit attached to Graulich's declaration to find the defamatory
27   statement at issue.  "As the Seventh Circuit observed in its now familiar maxim, '[j]udges are not
28   like pigs, hunting for truffles buried in briefs.'"  *Indep. Towers of Wash. v. Washington*, 350 F.3d

1   925, 929 (9th Cir. 2003) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).  The
2   Court therefore declines to even consider Plaintiff's argument as to whether a conditional
3   privilege exists.

                *ii.*        *Statements to Law Enforcement and EDD*

5   Defendant argues "[e]mployment-related publications that report crimes to the police or a
6   regulatory agency are absolutely privileged, even if made in bad faith," and therefore its report to
7   the Citrus Heights Police Department of the potential crime of theft and disclosure to EDD are
8   not actionable.  (ECF No. 18-1 at 13 (citing Cal. Civ. Code § 47).)  In opposition, Plaintiff asserts
9   that § 47 is a liability privilege, not an evidentiary privilege, which means that a statement can be
10  used as evidence "to supply or prove an element of a cause of action."  (ECF No. 20 at 6.)  In
11  reply, Defendant contends that "[s]tatements that reference an investigation into a crime are not
12  defamatory."  (ECF No. 21 at 4.)

13  The Court declines to consider the parties' arguments regarding privilege because, as
14  noted earlier, it finds that Plaintiff does not raise *any* other defamatory statement (other than those
15  stated above) or identify *any evidence* containing a defamatory statement in her opposition or in
16  her Separate Statement of Undisputed Material Facts.  (*See* ECF Nos. 20, 20-3.)

                *iii.*        *Self-Publication*

18  Defendant argues Plaintiff "has no material evidence that she was under a strong
19  compulsion to disclose information about her discharge as she did, much less that [Defendant]
20  knew when it discharged her that she would tell prospective employers she had been accused of
21  theft."  (ECF No. 18-1 at 14 (citing *Live Oak Publ'g Co. v. Cohagan*, 234 Cal. App. 3d 1277,
22  1284 (1991); *Davis v. Consol. Freightways*, 29 Cal. App. 4th 354, 373 (1994)).)  In opposition,
23  Plaintiff asserts Defendant's argument "falls short" because "[s]everal . . . cases conclude that no
24  actual negative job reference be issued to [a] prospective employer."  (ECF No. 20 at 16 (citing
25  *Reese v. Barton Healthcare Systems*, 693 F. Supp. 2d 1170, 1189 (E.D. Cal. 2010); *Schmidt v.*
26  *Levi Strauss & Co.*, No. C-04-01026 RMW, 2008 WL 4450331 (N.D. Cal. Sept. 30, 2008)).)  In
27  reply, Defendant contends *Reese* stands for the proposition that "a plaintiff may have a strong
28  compulsion to republish wrongful grounds for termination to prospective employers in order to

9

explain away negative inferences that will be learned through investigation of the plaintiff's prior employment," but "there is no way" Plaintiff's prospective employers could have learned of the reasons for her termination as it is not public and Defendant did not provide them with that information. (ECF No. 21 at 3–4.) Defendant contends Plaintiff had no reason to disprove a statement at issue and therefore she was not required to self-publish. (*Id.* at 4.)

As previously noted, publication is a necessary element for a defamation claim. *Bowles*, 444 F. Supp. 3d at 1172. An exception to this rule is when it is foreseeable that a defendant's act would result in publication to a third party. *Live Oak Publ'g Co.*, 234 Cal. App. 3d at 1284. If a job applicant is required to tell a prospective employer about something in his personnel file "*in order to explain away a negative job reference*," republication might be foreseeably required. *Davis*, 29 Cal. App. 4th at 373 (emphasis in original) (internal quotations omitted) (quoting *Live Oak Publ'g Co.*, 234 Cal. App. 3d at 1287). "[S]elf-publication of [an] alleged defamatory statement may be imputed to the originator of the statement if 'the person defamed [is] operating under a *strong compulsion* to republish the defamatory statement and the circumstances which create the strong compulsion are known to the originator of the defamatory statement at the time he communicates it to the person defamed.'" *Id.* (quoting *McKinney v. Cnty. of Santa Clara*, 110 Cal. App. 3d 787, 797–98 (1980)).

In the instant case, Plaintiff has not established any triable issue of material fact that there was any "strong compulsion" to republish the statement to the 99 Cents Store in her interview that she had been terminated from Defendant's employment because it accused her of being a thief. Nor has Plaintiff established that there was any "strong compulsion" to respond to questions on her 99 Cents Store and Costco job applications asking for the reason she left her prior employer by writing "wrongful termination." Plaintiff cites to no evidence in her opposition or her Separate Statement of Undisputed Material Facts to suggest that Defendant discussed its investigation or any of the circumstances around Plaintiff's termination with any of Plaintiff's prospective employers, including Costco and the 99 Cents Store. (*See* ECF Nos. 20, 20-3.) The Court finds therefore that Plaintiff "has failed to demonstrate any facts, raising a triable issue of material fact, that [s]he was compelled to republish any defamatory matter." *See Davis*, 29 Cal.

App. 4th at 373.

In sum, Plaintiff does not establish sufficient facts to create a triable issue of material fact as to whether there was a false, defamatory statement with respect to internal statements or with respect to the Citrus Heights Police Department and EDD, or that there was a "strong compulsion" to self-publish the alleged defamatory statements to her prospective employers. Accordingly, Defendant's motion for summary judgment as to this claim is GRANTED.

### B. Claim Two: Wrongful Termination in Violation of Public Policy

Defendant argues Plaintiff "was terminated because she violated company policies when she processed three transactions as cash and put no money into the cash drawer, causing a loss of $2442.30," and she admits that she processed the three transactions improperly. (ECF No. 18-1 at 15.) Defendant further argues that Plaintiff admits her employment was at-will and "[t]here is no public policy preventing [Defendant] from terminating an employee in these circumstances." (*Id.*) Defendant contends that even if suspicions about her conduct were wrong, "there is no public policy preventing an employer from separating an employee based on a mistaken belief that the employee stole money." (*Id.*) Plaintiff does not address this claim at all in her opposition. (*See* ECF No. 20.) In reply, Defendant points out that Plaintiff "does not refute that her discharge does not violate public policy" and therefore this claim fails. (ECF No. 21 at 2, 8.)

Wrongful termination in violation of public policy is a California common law claim that provides "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1024 (N.D. Cal. 2012) (quoting *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980)). The public policy at issue must be: "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'insures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Id.*

In the instant case, Plaintiff alleges in her Complaint that Defendant "violated California's laws regarding defamation of professional reputation[] when it fired Plaintiff for 'theft' and then published the accusation." (*See* ECF No. 1 at 22.) Plaintiff does not cite to *any* argument or

evidence in her opposition or her Separate Statement of Undisputed Material Facts to establish the fundamental requirements for the public policy at issue — namely, where this public policy is delineated, how it is "public," whether it was well established at the time of Plaintiff's discharge, and whether it is substantial and fundamental. (*See* ECF Nos. 20, 20-3); *see also Ferretti*, 855 F. Supp. 2d at 1024. Defendant is also correct that Plaintiff does not dispute that her employment with Defendant was at-will and that she processed the three transactions at issue improperly. (PR ¶¶ 68–69.) Because Plaintiff is unable to establish what public policy at issue has been violated, which is necessary to sustaining this claim, Defendant's motion for summary judgment as to this claim is GRANTED.

### C. Claim Three: IIED

Defendant argues this claim is barred by the doctrine of workers' compensation exclusivity, but even if the claim were not barred, it would fail because Plaintiff cannot show extreme and outrageous conduct or severe emotional distress. (ECF No. 18-1 at 15–19.) Defendant argues that "[i]t is well-established that IIED claims which arise in the context of an employment relationship are absolutely barred by the workers' compensation exclusivity doctrine." (*Id.* at 16–17 (citing *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 162–63 (1987); *Davaris v. Cubaleski*, 12 Cal. App. 4th 1583, 1587–89 (1993); *Pichon v. Pac. Gas & Elec. Co.*, 212 Cal. App. 3d 488, 494–98 (1989)).) Plaintiff does not address Defendant's arguments in her opposition.[7] (*See* ECF No. 20.) In reply, Defendant notes that Plaintiff does not refute that her IIED claim is barred by the doctrine of workers' compensation exclusivity nor does she argue Defendant engaged in extreme and outrageous conduct or that she suffered severe emotional distress. (ECF No. 21 at 2, 8.)

California courts have concluded:

> When the misconduct attributable to the employer in actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing

---

[7]  Plaintiff argues that workers' compensation is not the exclusive remedy for defamation in employment, but does not address workers' compensation with respect to her IIED claim. (*See* ECF No. 20.)

> disability may not avoid the exclusive remedy provision of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability.

*Pichon*, 212 Cal. App. 3d at 495 (quoting *Cole*, 43 Cal. 3d at 160). Courts have also specifically held that "any claims for damages to plaintiff's psyche are barred by the exclusivity provisions of the [California] Workers' Compensation Act regardless of whether the claimed damages are for injuries caused by harassment leading up to the termination of [plaintiff's] employment, or by the termination itself." *Id.* at 498, 504 (citing *Traub v. Bd. of Retirement*, 34 Cal. 3d 793 (1983)).

In the instant case, Defendant is correct that Plaintiff's claim arises out of the investigation of the loss of $2,442.30 from her cash register, Baser's questioning of Plaintiff, Lloret's[8] statement that "people surprise me all the time," and Lloret's refusal to help Plaintiff get reinstated. (ECF No. 18-1 at 17.) The Court finds that the foregoing actions are all "a normal part of the employment relationship" and arise from alleged injuries "caused by harassment leading up" to Plaintiff's termination and the termination itself. *See Pichon*, 212 Cal. App. 3d at 498, 504. Plaintiff's IIED claim is therefore barred by the California Workers' Compensation Act. Accordingly, Defendant's motion for summary judgment as to this claim is GRANTED.

### IV.   CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED. The Clerk of the Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

**DATED: September 14, 2022**

_____
Troy L. Nunley
United States District Judge

---

[8] In her deposition, Plaintiff identifies "Lloret" as AJ Lloret, one of Defendant's employees. (ECF No. 18-6 at 30.)